IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN GROSS,<br>      Plaintiff,<br><br>vs.<br><br>TONOMO MARINE, INC.,<br>      Defendant. | )<br>)  Civil Action No. 02-1317<br>)  Judge Terrence F. McVerry<br>)  Magistrate Judge Lisa P. Lenihan<br>)<br>)<br>) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment on the question of whether Defendant's barge is a "vessel" for purposes of this Court's admiralty jurisdiction over Plaintiff's claims be granted.

### II. REPORT

As more fully set forth in this Court's prior Report and Recommendation of May 25, 2004 (the "Previous R&R"), this case involves a personal injury action filed by Plaintiff, Stephen Gross, against Defendant, Tonomo Marine, Inc., alleging injuries incurred during the unloading of bundles of iron or steel, by crane, from a river barge onto a flatbed truck on June 13, 2000. Plaintiff's Complaint, filed on July 29, 2002, was filed as a Complaint in Admiralty pursuant to Fed. R. Civ. P. 9(h).

The Previous R&R discussed at length the reasons for this Court's conclusion that the barge to which the crane was permanently mounted fell within the broad definition of "vessel" as set forth in the applicable statute, *i.e.*, 1 U.S.C. § 3. It also examined the history of admiralty law relevant to the determination of "vessel" status and the various holdings of the District and Circuit Courts. More specifically, it noted that (a) although some jurisdictions have recognized a "work platform exception" holding certain types of marine-related barges or equipment to fall, under particular factual circumstances, outside the meaning of "vessel", no such exception has been recognized by either this Court or the Third Circuit; and (b) moreover, even if this Court were to allow such an exception, the facts before it were presently clearly insufficient to overcome the classification of Defendant's crane barge as a "vessel" within the plain language of the statute.

Because the Supreme Court has recently pronounced that, in accordance with 1 U.S.C. § 3, a "vessel" is "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment",[1] and because Defendant's crane barge is within this definition, Plaintiff's Motion for Summary Judgment should be granted.

A. **Statement of Facts and Procedural History**

This is a civil action seeking recovery for personal injuries allegedly sustained on June 13, 2000. Plaintiff alleges that he was then, as an employee of Richard Lawson Excavating ("Lawson"), assisting Defendant's employees in the transference of iron ingots from a large river barge onto a truck owned by his employer. Plaintiff was knocked from the flatbed of the truck,

---

[1] Stewart v. Dutra Construction Company, 125 S.Ct. 1118, 1129 (2005).

2

sustaining injuries, when he was struck by the spreader beam of the floating crane, located on a barge in the river and being operated by Defendant's employees.[2]

The Complaint was filed with this Court on July 29, 2002, more than two years after the alleged incident, and asserts negligence in violation of general maritime law obligations. It was amended by leave on November 13, 2003. Defendant filed a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction under 46 U.S.C. § 740 on January 13, 2003, which Motion was denied by this Court in May, 2004.

### B. Standard of Review

In considering a Motion for Summary Judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment and grants said Motion only when "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); see also Eichenlaub v. Township of Indiana, 385 F.3d 274, 279 (3d Cir. 2004).

### C. Analysis - Vessel Status

As noted in the Previous R&R, under the Admiralty Extension Act, this Court has jurisdiction over "all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. App. § 740 (1948).

---

[2] Defendant's flat-bottomed platform crane was hired to unload steel billets approximately 30' long and weighing approximately one ton each from a jumbo barge at Mon Valley Transportation Company ("Mon Valley"); the crane barge, which is not self-propelled, was towed approximately 500 yards to Mon Valley's seawall, where it was moored and spudded down. This crane was moved from its primary location at Defendant's seawall when hired to perform its function of loading/unloading cargo at another work site.

Plaintiff asserts that he was injured by a crane on a barge in navigable waters and that Defendant's "crane barge" constitutes a "vessel" for purposes of subject matter jurisdiction under general admiralty law. Defendant's position is that the "work platform" to which the crane is permanently afixed does not constitute a "vessel" because its transportation function is merely incidental to its purpose as a work platform. Accordingly, much of the Previous R&R addressed in detail intra-Circuit developments regarding "vessel" status under general maritime law.

Most fundamentally, this Court noted that the applicable statute broadly defines "vessel" for purposes of admiralty jurisdiction as "includ[ing] every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transport on water." 1 U.S.C. § 3. See also Calhoun v. Yamaha Motor Corp., USA, 216 F.3d 338, 345 (3d Cir. 2001) (quoting this statute as authority for its determination of admiralty jurisdiction and adding additional emphasis to the word "*every*").[3] It also noted that a review of the Third Circuit's case law suggested that it would, in keeping with the statutory language, acknowledge only a narrow class of exception from vessel status. See, e.g., United States v. West Indies Transport, Inc., 127 F.3d 299, 309 (3d Cir. 1997) ("Floating structures are not classified as vessels . . . if they are incapable of independent movement over water, are permanently moored to land, have no transportation

---

[3] Cf. Cope v. Vallette Dry-Dock Co., 119 U.S. 625, 629-30 (1887) (noting that "the terms 'ships and vessels' are used, in a very broad sense, to include all navigable structures intended for transportation" and, after surveying British admiralty law, concluding that their transportation purpose was the common thread binding together maritime craft classified as vessels).

function of any kind, and have no ability to navigate.") (quoting with approval Katriner v. UNISEA, Inc., 975 F.2d 657 (9th Cir. 1992)).[4]

This Court also discussed at length its consideration of the line of cases referred to by Defendant, in which some other Courts have held that certain structures, including some barges, do not constitute "vessels" in certain circumstances. The criteria applied in these cases generally look to the purpose and use of the structure in question, and the earliest case was Bernard v. Binnings Construction Co. See 741 F.2d 824, 831 (5th Cir. 1984) (holding that structure is not a vessel as a matter of law if (1) it was constructed and used primarily as a work platform; (2) it was moored or otherwise secured at the time of the accident; and (3) although capable of movement and sometimes moved across navigable waters, any transportation function was incidental to its primary purpose of serving as a work platform). Three other Courts of Appeals subsequently adopted modified versions of the Fifth Circuit's approach. See Tonnesen v. Yonkers Contracting Co., 82 F.3d 30, 36 (2d Cir. 1996) (replacing first prong with "whether the structure was being used primarily as a work platform during a reasonable period of time immediately preceding the accident");[5] DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1123

---

[4] In concluding that the barge at issue was not a vessel, the Third Circuit found it significant that it was permanently moored to shore and *could not* "have been used for transport", as the barge was half-submerged in a bay, with part of its hull resting on the bottom and water visible below its decks. See also Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty*, 33 (2d ed. 1975) (commenting that while "a single clear test is hard to discern[,] perhaps the best approximation would be to say that the term 'vessel' is applied to floating structures capable of transporting something over the water"). Cf. Evansville & Bowling Green Packet Co. v. Coca-Cola Bottling Co., 271 U.S. 19, 22 (1926) (concluding that vessel's transportation function is what differentiates it from its land-based counterpart).

[5] In Tonnesen, the Second Circuit held that genuine issues of material fact existed, precluding summary judgment, on whether floating crane barge in use at bridge construction site and spudded down was "vessel in navigation" where its primary purpose was to serve as work

(1ˢᵗ Cir. 1992) (*en banc*) (looking to whether barge or other float's purpose or primary business is navigation or commerce);⁶ Hurst v. Pilings & Structures, Inc., 896 F.2d 504 (11ᵗʰ Cir. 1990) (following Leonard v. Exxon Corp, 581 F.2d 522 (5ᵗʰ Cir. 1978) as its own Circuit precedent in holding spud barge moored to quay wall was not a vessel).⁷

---

platform but it was not clear whether any transportation function performed by it was merely incidental to that use. See id. at 32-33. See also id. at 36-37 (noting that record did not then reveal "full extent or purpose" of crane's movement and contrasting cases in which "permanently moored" barges were held to lack vessel status) (citing Burchett v. Cargill, Inc., 48 F.3d 173 (5ᵗʰ Cir. 1995); Ducrepont v. Baton Rouge Marine Enters., Inc., 877 F.2d 393 (5ᵗʰ Cir. 1989)).

⁶ The majority in DiGiovanni, over a vigorous dissent, quoted Bernard but "applied the Fifth Circuit's test far more restrictively than the Fifth Circuit or, for that matter, any circuit, ever had." Tonnesen, 82 F.3d at 34 (declining to follow DiGiovanni) (citing DiGiovanni, 959 F.2d at 1128 (Torruella and Bownes, JJ., dissenting)). It held that a crane barge being used in bridge construction was not a vessel because it was not used primarily for transportation, nor was it engaged in navigation at the time of the injury. As the Second Circuit succinctly notes, the First Circuit thus "essentially substituted actual navigation as the sole requirement for vessel status." Id. See also Brett D. Wise, Vessel Classification and the Work Platform Exception, 70 Tul. L. Rev. 691, 712 (1995) (noting that "[t]he First Circuit's test was . . . entirely new in its scope"); DiGiovanni, 959 F.2d at 1128-29 & Appendix (Torruella and Bownes, JJ., dissenting) (explaining that the rule adopted by the majority was at odds with general maritime law, as seen from the definition of the term "vessel" in the 24 maritime-related statutes cited in the dissent's Appendix, all of which would encompass the barge in question).

⁷ Following reorganization of the Circuit Courts, in 1981, the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981. See Hurst, 896 F.2d at 507.

As discussed in the Previous R&R, in its most recent pronouncement on the question of vessel status, the Fifth Circuit appeared to step back from its earlier exemption cases. It distinguished both Leonard and Watkins v. Pentzien, Inc., 660 F.2d 604 (5ᵗʰ Cir. 1981), the second case cited as authority in Hurst, as involving a barge that was merely an extension of a dock and thus exempt from vessel status by extension of Cope. See Manuel v. P.A.W. Drilling & Well Service, Inc., 135 F.3d 344, 351 (5ᵗʰ Cir. 1998) (concluding that transportation was essential rather than "incidental" where mobility allowed barge equipped with studs to provide services in various places); id. at 349 (describing Watkins as "holding that two barges fastened together, moored to bank of river, and used to weld pipeline together were not vessels" and Leonard as "holding that platform consisting of four flat-deck barges moored to banks of Mississippi River 'more or less permanently' by steel cables was not a vessel"); id. at 351 n. 9

In declining to follow this line of cases, the Previous R&R noted that neither this Court nor the Third Circuit has recognized a similar exception for certain structures otherwise constituting "vessels" under the broad language of 1 U.S.C. § 3. And that, to the contrary, our limited case law suggested an intent to adhere to a correspondingly broad application of the term.[8] Moreover, it concluded that this understanding of "vessel" status appeared more in keeping with the Supreme Court's teachings.[9]

---

(observing that "in the vast majority of [the Fifth Circuit's] work platform cases, the structure at issue was moored or otherwise fastened in a more or less permanent manner to either the shore or the water bottom") (citations omitted).

[8] Cf. Mallard Bay Drilling, Inc. v. Kennedy, 2005 WL 1528237, *12 (La. June 29, 2005) ("The meaning of 'vessel' for purposes of maritime law is often broadly construed as it involves situations where an injured worker is seeking compensation for injuries."); Koernschild v. W.H. Streit, Inc., 843 F. Supp. 711 (D.N.J. 1993) (citing 1 U.S.C. § 3 as authority in considering whether structure qualified as vessel under the Longshore and Harbor Workers' Compensation Act, noting that its "language . . . could hardly be more expansive").

[9] See Previous R&R at 13-14:

> Here, as in Grubart, the crane at issue "sat on a barge stationed in the . . . river", which barge was towed to its location and secured with spuds for the duration of the work. See Grubart, 513 U.S. at 534-35. "The place in the river where the barge sat, and from which workers directed the crane, [was] in the 'navigable waters of the United States.'" Id. at 534. And "[e]ven though the barge was fastened to the river bottom and was in use as a work platform at the times in question, at other times it was used for transportation." Id. at 535 (citing Great Lake Dredge & Dock Co. v. Chicago, 3 F.3d 225, 229 (7th Cir. 1993)). Petitioners in Grubart therefore "did not seriously dispute the conclusion of each court below that the Great Lakes barge [was], for admiralty tort purposes, a 'vessel'". Id.

As noted in the Previous R&R, the Seventh Circuit had held, in the case below, that the Great Lake's barge was a "vessel" subject to admiralty jurisdiction although "being used as a stationary platform" because its purpose was "to some reasonable degree the transportation of passengers, cargo or equipment from place to place across navigable waters." 3 F.3d at 229. Cf. id. ("There is no doubt that [Defendant]'s barges are capable of, and have performed, such transportation functions. Accordingly, they are 'vessels.'").

Since the issuance of this Court's Previous R&R, the Supreme Court has drawn much the same analysis of "vessel" status cases. See <u>Stewart v. Dutra Construction Co.</u>, 125 S.Ct. 1118 (2005). More specifically, it has distinguished those cases involving "watercraft temporarily stationed in a particular location and those permanently affixed to shore or resting on the ocean floor." <u>Id.</u> at 1126-27. The latter are, of course, "'not practically capable of being used as a means of transportation'" and are therefore outside the broad sweep of §3. <u>Id.</u> (quoting <u>Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.</u>, 271 U.S. 19, (1926)). The former, in contrast, are capable of transport and are therefore "vessels."

In so holding, the Supreme Court expressly overruled <u>DiGiovanni v. Traylor Brothers, Inc.</u>, and rejected the First Circuit's formulation of a vessel status test dependent on (a) a primary purpose of navigation and (b) actual navigation at the time of injury. <u>Id.</u> at 1127-28 (noting that "[n]either prong . . . is consistent with the text of §3 or the established meaning of the term 'vessel' in general maritime law").[10] Rather, it concluded that defendant's "massive floating platform", moved by tugboat and used to dig a trench beneath Boston Harbor, was a "vessel" even though its primary purpose was dredging, not transportation, and it was stationary at the time of the plaintiff's injury. <u>Id.</u> at 1121-22; 1129 ("Under §3, a vessel is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment.").

Importantly, the Court noted that "[f]rom the very beginning" of maritime jurisprudence, the courts recognized watercraft as vessels when they had "'the capacity to be navigated in and upon the waters'", even when they had no means of self-propulsion and were not made or

---

[10] See also *supra* n. 6 (discussing First Circuit precedent).

8

adapted to carry either freight or passengers. Id. at 1125 (quoting The Alabama, 19 F. 544, 546 (S.D. Ala. 1884)). It observed that it continued to be settled law that dredges and "comparable watercraft" or "special-purpose vessels" qualified as "vessels" because they were "means of maritime transportation" and "served a waterborne transportation function."[11] It pointedly noted that the vessel in question would have been unable to perform the task at which it was engaged had it been unable to be used "'as a means of transportation on water.'" Id. at 1128 (quoting 1 U.S.C. § 3).[12] Finally, it stated that "[t]he question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." Id.

The effect of the Stewart opinion on this case is, therefore, (1) to reassure this Court of the correctness of its prior analysis; (2) to confirm that the definition of "vessel" continues to be governed by 1 U.S.C. § 3;[13] (3) to clarify that a statute encompassing every watercraft "capable of being used" for transport over water does not lend itself to an interpretation distinguishing between primary and incidental transportation purposes; and (4) to establish that Defendant's

---

[11] Id. at 1125-27 & n. 6 (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 535 and n. 1 (1995) (indicating that a stationary crane barge was a "vessel") as an example of a "comparable watercraft").

[12] Cf. Previous R&R (suggesting that "vessel" would encompass crane barge "presumably constructed, acquired and/or maintained for the performance of work facilitated by its water-transport capabilities").

[13] See 125 S.Ct. at 1124-25 (noting that § 3's definition "has remained virtually unchanged [since] 1873 [and] continues to supply the default definition of 'vessel' throughout the U.S. Code"); id. at 1125 (noting that §3 "merely codified the meaning that the term 'vessel' had acquired in general maritime law") (citing 1 S. Friedell, Benedict on Admiralty § 165 (rev. 7th ed. 2004)).

crane barge was, as it appeared the Third Circuit would have it, a "vessel" for purposes of admiralty law.[14]

## III. CONCLUSION

It is therefore recommended that Plaintiff's Motion for Summary Judgment regarding the status of Defendant's crane barge as a "vessel" for purposes of subject matter jurisdiction be granted. In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: July 25, 2005

cc:   The Honorable Terrence F. McVerry
      United States District Judge

---

[14] Cf. Bennett, 510 F.2d at 116 (noting that "[w]hether a *marginal* structure is a vessel is [appropriately reserved]") (emphasis added); Stewart, 125 S.Ct. at 1128 (holding that "no relevant facts were in dispute" for jury where defendant "conceded that [watercraft] was only temporarily stationary while [work was being done]; it had not been taken out of service, permanently anchored, or otherwise rendered *practically incapable of maritime transport*") (emphasis added).

10

Dennis M. O'Bryan, Esq.
O'Bryan Baun Cohen Kuebler
401 South Old Woodward
Suite 320
Birmingham, MI 48009
Counsel for Plaintiff

Leonard Fornella, Esq.
Marilyn Larrimer, Esq.
Heintzman, Warren, Wise & Fornella, P.C.
707 Grant St., Gulf Tower
35th Floor
Pittsburgh, PA 15219
Counsel for Defendant